PENN (CONN v.). See Cases Nos. 3,104 and 3,105.

## Case No. 10,932.

### PENN v. GROFF et al.

[1 Wash. C. C. 390.] [1]

Circuit Court, D. Pennsylvania. April Term, 1806.

LAND PATENTS IN PENNSYLVANIA—PROPRIETARY'S TENTHS.

The proprietaries of Pennsylvania, by authorizing their agent. in 1733, to adjust the claims of settlers, on the west side of the Susquehannah, within the boundaries of a body of lands, which was afterwards resurveyed as the. manor of Springettsbury, and to allow to those persons common terms for the same; did not, thereby, deprive themselves of the legal right to appropriate all the residue of these lands, as part of the proprietary tenths, and to claim the said residue as part of their said manor.

This case [by the lessee of John Penn and Richard Penn against Groff] was, in every respect, like that of Penn v. Kline [Case No. 10,935], and the argument at the bar, was nearly the same; except that this point was started by the counsel for the defendant (Mr. James Ross of Pittsburgh, and Mr. Hopkins, who were employed by the state of Pennsylvania), and very much pressed; that is, that after settlements were made on the western side of the Susquehannah, on the common terms, the proprietary had no right to lay off his tenths there, so as to enclose a single settler, although the residue should be clear of settlers, and even though no more should be demanded from such settler, than what was paid by others, purchasing upon the common terms. The reason assigned was. that every person, settling there upon common terms, was not only entitled to the privilege of paying no more than the common price, but to retain the advantages he had also expected from a close population, and the certain consequence of increase of value to his land, which might be prevented, by being enclosed within the boundaries of a manor. That the commission from Thomas Penn to Blunston, in 1733, in which he speaks of certain persons, who had settled west of the Susquehannah, under promises from the governor, and of applications of others to settle, and appointing him to adjust any differences among the settlers, and to grant them licenses for their lands, for which warrants should issue on the common terms; amounted to a contract. on the part of the proprietary, to grant out all the lands, west of the Susquehannah, on the common terms;

[1] [Originally published from the MSS. of Hon. Bushrod Washington. Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters, Jr., Esq.]

and, consequently, that he had no right afterwards to enclose those settlers within a manor, and compel them to take out warrants to agree; which left the settlers, as to the price of their lands, entirely at the mercy of the proprietary.

THE COURT read to the jury the charge, in the case of Penn v. Kline, and then noticed this new argument, as follows: It seems to be contended, on general principles, that, after settlements were made west of the Susquehannah, the proprietary could not lay off his tenths on that side of the river. Whether the settlers would be benefited, or injured, by being thrown within the limits of a manor, might be a questionable thing; at any rate, the court are of opinion, it is too entirely hypothetical to form any solid reason, why the principle contended for, should have existed. The doctrine is novel, and, we think, very extravagant; because, it goes to cut the proprietary out of his acknowledged right to one-tenth of the lands on the west of the Susquehannah, as well by the prior settlement of one solitary individual in that country, as if thousands had settled there. But, what law is it, that sanctions this doctrine? His right to the whole of the soil, by his charter, is no otherwise diminished by his concessions, than as to nine-tenths; as to which, it is clear of all restraints, but such as he might please afterwards to impose. But, it is said, that his commission to Blunston amounted to a contract, not only with those who had, but with those who might thereafter settle on those lands, that they should hold them on the common terms; therefore he could not appropriate those lands as part of his tenths: whether this is the proper construction of that commission, we avoid deciding now, lest we should prejudice the case of these defendants, should it be brought before us on the other side of the court. But, if the construction be as contended for, still, the consequence does not follow. For, let it be conceded, that the proprietary bound himself by that commission to let the lands on the west side of the river, to be taken up on the common terms, this would not prevent him from appropriating a tenth as private property. Those, to whom he issued warrants, might say, that he could not exact more than the common terms; but, yet, he might exact those terms. The legal right to the soil would be one thing; the terms on which others could acquire it, was quite another. The argument which we have heard, might have done very well in the legislature, which passed the divesting and confirming law, and the reasons, if sound, might properly have been urged to induce that body, either not to confirm the title of the proprietaries to their tenths, or to qualify the law, so as to compel the proprietaries to demand the purchase money, only at the rate on which the general lands had been sold. They might do in the state court, where, I understand, the defendant, though a verdict were found against him, might redeem the land, by paying the purchase money to such amount, as the jury might find. They might do this on the equity side of this court, if the defendant were applying to be secured in his possession, on paying the purchase money. But, the question for you to decide, is not what sum the defendant shall pay for the land; but, who has the legal title to it? Now, if this land was part of a reputed manor, which was duly surveyed and returned, before the 4th of July, 1776, then the legal title is in the plaintiff; and, it is admitted, that the defendant has only a survey, without a patent, and without having paid the consideration. If you find for the plaintiff, then the defendant may compel the plaintiff, on the equity side of this court, to receive what is justly due, that is, £15. 10s. a hundred, if he is entitled to hold on the common terms; or such other sum as may be thought the value of the land, if he be not so entitled. But you have nothing to do with this now.

Upon the whole, then, if you are of opinion, upon the evidence, that the land in dispute, is part of a tract called and known by the name of a proprietary's tenth, or manor, and was actually surveyed in the year 1768; then, it is the opinion of the court, that the manor of Springettsbury, was duly surveyed; and, it is admitted, it was returned into the land office before the 4th of July, 1776: and, therefore, the plaintiff is entitled to recover.

Verdict for plaintiff.